UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

JAMES H. BRADY,                                    Civil Action No.
                              *Plaintiff*,          20-cv-7047 (LJL)
            *v.*

GREGORY SHEINDLIN ESQ., *and*
THE SHEINDLIN LAW FIRM,

                        *Defendants*.
_____X

## **PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
## **MOTION TO DISMISS**

Gregory Sheindlin's (Sheindlin) November 13, 2020 *Motion to Dismiss*
does nothing more than provide more evidence that the politically connected son
of Judge Judy Sheindlin, deliberately and aggressively fraudulently forced
Plaintiff and his wife to sell their Hudson Yards "12th Floor and Roof Unit
Apartment" and lose their family event space business on September 5, 2018 to
pay IGS Realty over $1.7 million dollars when Sheindlin knew that there was
never a Jury finding in IGS Realty's favor on the personal guarantee issue, and
Sheindlin knew there was never a Jury finding against Brady on the personal
guarantee defenses in the June 26, 2015 three question Jury Interrogatories.
(Plaintiff's Exhibit No. 6-2).

Sheindlin also knew he never obtained a finding by Judge Ostrager, the Appellate Division, First Department, or the New York State Court of Appeals adjudging that the personal guarantees were enforceable, and Sheindlin never obtained the required judgment from Judge Ostrager or anyone else rejecting Plaintiff's numerous defenses to the enforceability of the personal guarantees.

Sheindlin's November 13, 2020 *Motion to Dismiss* further proves the fact that Sheindlin committed a felony as an officer of the Court when he himself wrote the May 31, 2017 financial judgment where it is shown he fraudulently "implied" but did not actually state that the three question June 26, 2015 Jury Interrogatory findings were a jury finding that the personal guarantees between Plaintiff and IGS Realty were enforceable and that Plaintiff's defenses to the personal guarantees were rejected by the jury.

Sheindlin's misrepresentation through implication of the June 26, 2015 jury findings was a criminal act.  The May 31, 2017 financial judgment (Defendant's Exhibit No. 16-2) that Sheindlin himself wrote proves Sheindlin fraudulently used the three question Jury Interrogatory answers from June 26, 2015 as false instruments misrepresenting through implication only that the three question jury findings on the June 26, 2015 jury interrogatory sheets where  a judgement by the jury that through question number one the personal guarantees were enforceable against Plaintiff, and that the jury findings in question number

two and three were jury findings against Plaintiff's defenses to the personal guarantees.  This was a criminal act and the bases for the claims for damages against Sheindlin.

In Sheindlin's November 13, 2020 *Motion to Dismiss,* he over and over keeps saying that there was a final State Court judgement against Brady when he knows there was never a State Court judgement by the Jury or anyone else ruling in favor of IGS Realty on the personal guarantee issue and Sheindlin knew that neither the jury or anyone else ever ruled against Brady's multiple defenses that voided the personal guarantees as a matter of law and public policy although these defenses were litigated exhaustively by Brady in State Court.

The May 31, 2017 financial judgment Sheindlin that Sheindlin wrote and provides as Exhibit 16-2 is Plaintiff's best proof of Sheindlin's fraudulent and criminal actions.

This May 31, 2017 document that Sheindlin wrote proves Sheindlin acted with criminal intent when he fraudulently misrepresented through implication that the three question  Jury Interrogatory answers were a jury finding that the personal guarantees were enforceable and that the jury rejected Brady's multiple defenses when not a word of his false representations were true.

The May 31, 2017 financial judgment which fraudulently misrepresented through implication that the jury ruled in favor of IGS Realty on the personal

guarantee issue and that the Jury ruled against Plaintiffs Defenses to the personal guarantees when he know none of the multiple questions that needed to be answered by the jury pertaining to these issues were on the three question jury sheets, was the only basis for why IGS Realty was able to collect over $1.7 million dollars from Plaintiff and his family on September 5, 2018.

The civil and criminal damages that Plaintiff is seeking from Sheindlin for his proven criminal acts cannot be barred by lack of subject-matter jurisdiction, the Rooker-Feldman Doctrine, *res judicata*, collateral estoppel, or the Noerr-Pennington Doctrine.

Since the three question Jury Interrogatory prove that there was no finding by the jury that the personal guarantees were enforceable, and there was no jury finding rejecting Plaintiff's defenses against the personal guarantees, this proves Plaintiff was not coming to this Court as a State Court loser on the personal guarantee issue, which was the only contract Plaintiff had with IGS Realty. This means the Rooker-Feldman Doctrine does not shield Gregory Sheindlin from his crimes.

Sheindlin is lying when he asserts that *res judicata* and collateral estoppel bar Plaintiff's against him. As proven in the February 17, 2017 oral argument transcript (Exhibit No. 1), and the January 27, 2017 letter to Judge Ostrager (Exhibit No. 2), Plaintiff repeatedly fought to litigate the issue of the personal

guarantees and his defenses while Sheindlin and Judge Ostrager completely ignored the mandated questions that he admitted during jury instructions on June 26, 2015 needed to be answered in IGS Realty favor and against Brady's defenses before IGS Realty was able to collect on the personal guarantees.

The Jury Instructions of June 26, 2015 (Plaintiff's Exhibit No. 6-5) prove that both Judge Ostrager and Sheindlin knew there were a series of questions that needed to be asked and answered before a jury could determine whether the personal guarantees were voided, or whether Plaintiff's defenses were rejected, but none of the series of questions was ever presented to the jury so there was never a jury finding in IGS Realty favor that the personal guarantees were enforceable

The February 17, 2017 oral argument transcript shows Judge Ostrager refused to adjudicate the questions that he failed to include in the Jury Interrogatories.  Sheindlin knew Judge Ostrager refusal to adjudicate the issue or defense is not a win on the personal guarantees issue for IGS Realty, nor does it defeat Plaintiff's personal guarantees defense.

The February 17, 2017 oral argument transcript and the January 27, 2017 letter to Judge Ostrager prove that Plaintiff fought in State Court to have the personal guarantee issue and defenses adjudicated, yet the issue was never adjudicated in State Court, proving Sheindlin's claims that Plaintiff's claims

against him are barred by Rooker-Feldman Doctrine, *res judicata*, or collateral estoppel are false.

Regardless, this complaint against Sheindlin is about him and his fraudulent criminal acts that took place after the trial that ended on June 26, 2015.

Sheindlin is lying when he states that this Court has no subject-matter jurisdiction where Plaintiff and Sheindlin live in separate states, and the damage that Sheindlin caused through his fraudulent acts was over $1.7 million.

Sheindlin makes no attempt to explain how the Noerr-Pennington Doctrine would shield him from civil liability for his crimes against Plaintiff.  The Noerr-Pennington Doctrine is entirely inapplicable to the present case.

Sheindlin knew Judge Ostrager's June 26, 2015 Jury Instructions (Plaintiff's Exhibit No. 6-5) went into detail of what multiple questions needed to be answered by the jury in favor of IGS Realty and against Brady before IGS Realty could collect on the personal guarantees:

> [IGS Realty] claims that the contracts it had with the lessees that were guaranteed by Mr. Brady required that Mr. Brady pay the unpaid rents due through October 1, 2009, and that Mr. Brady breached the contracts by not paying the rent in full.  Mr. Brady claims that he was relieved of any obligation to pay rent because he was constructively evicted from the premises.
>
> [IGS Realty] has the burden of proving by a preponderance of the evidence that [IGS Realty] had a contract with Mr. Brady for the payment of rent, that [IGS Realty] did what it was required to do under the contract[,] [t]hat Mr. Brady breached the contract by not doing what he was required to do

under the contract, and that [IGS Realty] sustained damages because of Mr. Brady's breach.

In determining whether Mr. Brady breached his guarantee for the lease by not paying the full rent, you must consider whether Mr. Brady was constructively evicted from the premises pursuant to the instructions that I will give you.

Sheindlin knew when he was hired in late 2016 that none of these multiple steps listed above were ever presented to a jury or obtained during the jury trial, and it was his job to have these questions answered in favor of IGS Realty and against Brady's multiple defenses in order to obtain a personal guarantee judgment in favor of IGS Realty.

Instead the evidence proves Sheindlin fraudulently misrepresented through implication that Question No. 1 of the Jury Interrogatories was a jury finding that the personal guarantees were enforceable, and that Questions Nos. 2 and 3 were jury findings against Plaintiff's multiple defenses to the enforceability of the personal guarantees.

Sheindlin knew only three questions were asked of the jury and none of the three questions on the June 26, 2015 Jury interrogatories pertained to the multiple-step questions that Judge Ostrager said in his instructions would need to be "considered "and  answered by the jury in IGS Realty favor and against Brady

in order to collect on the personal guarantees.  This is an irrefutable fact by looking at the three question Jury interrogatories. (Plaintiff's Exhibit No. 6-2).

The May 31, 2017 financial judgment that Sheindlin fraudulently wrote to steal over $1.7 million dollars from Brady and his family shows the only thing that he used to support his claim that Brady owed IGS Realty over $1.7 million dollars was his false representation "through implication" that the three question Jury Interrogatory answers from June 26, 2015 were findings in favor of IGS Realty on the personal guarantee questions and a rejection of Brady's personal guarantee defenses.

A review of the slyly worded May 31, 2017 "financial judgment" that Sheindlin wrote as an officer of the court shows he DOES NOT ever state that IGS Realty won or that Brady lost the litigation that pertained to the Personal Guarantees during the June 2015 trial.

Sheindlin's actions were fraud on top of fraud.  Sheindlin knew question number one on the jury sheets was nothing more than an incorrect and irrelevant finding that Brady's corporations were acting as illegal banquet halls and not meeting hall's because of the false law told to them by Ostrager that if Brady's corporations did not follow a certain floor plain with patrons looking passively in one directions that meant that Brady was not operating as a legal meeting hall.

Plaintiff provide the floor plan proving the claim was false (Plaintiff's Exhibit 6-6) and yet it was ignored by the State Court.

The false law that led to the jury finding in Question Number One that Plaintiff's corporations were operating as banquet halls was never corrected, even after Plaintiff showed Judge Ostrager the Department of Buildings floor-plan.

Regardless, Scheindlin knew at the time he was hired in late 2016 that Question Number One had nothing to do with the personal guarantees yet he forced the sale of Plaintiff's business and destroyed the life of Plaintiff and his wife by fraudulently misrepresenting though implication that Question Number One on the Jury Interrogatories was a finding in IGS Realty favor that the personal guarantees were enforceable, and that Questions Nos. 2 and 3 were jury findings against Plaintiff's defenses to the personal guarantees.

The May 31, 2017 financial judgment that Sheindlin wrote on its face shows this falsehood:  "the jury rendered a verdict on June 26, 2015 in favor of the Plaintiff (IGS), against the defendant (Brady) in the amount of $541,758.62."

A review of page one of the money Judgment that Sheindlin wrote also shows that he fraudulently stated that the Financial Judgment debt was based on the June 26, 2015 verdict of a jury in the case of *IGS Realty v. James H Brady*.

In the second paragraph of page one of the money Judgment Sheindlin wrote the following:

"AND Plaintiff (IGS REALTY) having presented all its evidence in support of its claim and having rested, and the Defendant (Brady) having presented all its evidence in support of his defenses and having rested, the jury rendered a verdict on June 26,2 015, in favor of Plaintiff, against the Defendant, in the sum of $541,758.62, with the statutory rate of interest accruing from May 1, 2009 and the cost of disbursements of the Plaintiff."

This Court knows that it was criminal for Sheindlin to falsely "represent" and "imply' in the May 31, 2017 financial judgment that he wrote as an officer of the court that the verdict of the June 26, 2015 Jury was the underlying proof that a personal guarantee debt was adjudicated by a jury to owed to IGS Realty and to falsely imply that Brady's defenses to the personal guarantee defenses were rejected by the jury when he know no such questions were ever even presented to the jury on June 26, 2015.

In his fraudulent money judgment, Sheindlin also states the following:

And Plaintiff having filed a motion for attorney fees with accrued interest based on the verdict in its favor, Defendant having filed his objection and on February 17, 2017 oral arguments by the parties, the court issued its decision and Order (See NYSCEF Doc NO 291) that Plaintiff is entitled to attorney fees in the amount of $350,000 with interest accruing from January 1, 2012."

Mr. Sheindlin knew by reviewing the June 24, 2015 trial transcript (Exhibit 3) that IGS Realty "rested" after only the testimony of the landlord Philippe Ifrah, who made no assertions of any wrongdoing by Brady or his corporations, and Sheindlin knew the admissions made by Philippe Ifrah himself at trial by his own

attorney and during cross-examination prove the landlord's subsequent illegal actions that destroyed the building's certificate of occupancy, voided the personal guarantees as a matter of law and public policy.

And yet Sheindlin destroyed Plaintiff and his wife's lives and livelihood through nothing more than his fraudulent misrepresentation through implication that the three question Jury Interrogatory from June 26, 2015 were findings in IGS Realty favor on the personal guarantee issue and findings against Brady's multiple personal guarantee defenses when he knew his claims were totally false.

Mr. Sheindlin knew at the time that he was hired in late 2016 that it was already adjudicated through admission of Robert Fass at closing arguments on June 26, 2015 that the Personal Guarantees were voided by the landlord's illegal conduct after the leases and Personal Guarantees were signed:

> "So let's being at the beginning.  In 2001 Mr. Ifrah placed an ad in the New York Times.  He (Brady) goes to the space, checks it out, and puts a deposit down a check on one of the spaces.  Then speaks with his father who has great experience in real estate who tells him this is in the special garment district for zoning, so he better check out whether his use is permitted.

> "So he puts a stop on the check and tells Mr. Ifrah he wants to do his due diligence, which he does.  And he checks the whole building from top to bottom, legal and physical conditions, and concludes that everything is fine.  The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition.  So then he writes another check and rents the space.  After that in the same year and the following year he rents two other spaces.

"He also gets permits to construct meeting halls representing to the Building Department it's on the section that covers meeting halls, section of the regulation.  And he gets public assembly permits also for meeting hall use.  The last certificate of occupancy that he got expired in 2007."

These are admissions on the record by IGS Realty's attorney Robert Fass that IGS Realty and Principal Philippe Ifrah voided the Personal Guarantees by changing the risk under the leases and therein voided any personal liability by James H. Brady.

In New York, a personal guarantee of a lease is unenforceable when "the occupancy is illegal and in violation of the certificate of occupancy."  *Kaplan v. Synergy, Inc*., 23 Misc.3d 1123 (Civ. 2009).

A guaranty must be construed "in the strictest manner" (*White Rose Food v. Saleh*, 99 NY2d 589, 591 (2003).

An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the alteration.  See *White Rose Food v Saleh*, 99 NY2d 589 [2003]; *Davimos v Halle*, 35 AD3d 270 [2006.]).

"A guarantee will not be enforced where the modification impermissibly increased the guarantor's risk without his consent."  *White Rose Food*, 99 NY2d at 591 (refusing to enforce guarantee of commercial lease where underlying lease was modified).

A guarantor cannot be held responsible for the failure of the principal to

perform.  *Arlona Ltd. Partnership v 8th of Jan. Corp*., 50 AD3d 933, 934 9 (First

Dept 2008).

Secondly, Robert Fass's admissions constitute formal judicial admissions:

Facts admitted by a party's pleadings constitute formal judicial admissions.
Formal judicial admissions are conclusive of the facts admitted in the
action in which they are made.  *Zegarowicz v Ripatti*, 67 A.D.3d 672, 674-
675, (2nd Dep't 2009.)

Put another way: "a formal judicial admission dispenses with the
production of evidence by conceding, for the purposes of the litigation, the
truth of a fact alleged by the adversary."  *People v. Brown*, 98 N.Y. 2d 226,
232, (2002).  "Defendant is bound by his formal admission."


Sheindlin and IGS Attorney Robert Fass knew the personal guarantees

were voided through the admissions of the landlord Philippe Ifrah and his

attorney Robert Fass, yet Sheindlin made the criminal decision to lie and

fraudulently "imply only" in his May 31, 2017 judgment that he wrote that in his

that Question Number One on the Jury Interrogatories was a jury determination

that the personal guarantees were enforceable.

Plaintiff is not showing the May 31, 2017 financial judgment as a State

Court loser but as the iron clad proof of criminal activity by Sheindlin, who

obtained a money judgment by falsely implying that the Jury Interrogatory were a

finding for IGS Realty that the personal guarantees were enforceable, and falsely

asserting that Plaintiff's defenses against the personal guarantees had been
rejected by the jury.

Plaintiff's evidence in his *Second Amended Complaint* proves that at the
same exact time in 2018 that Sheindlin was fraudulently stealing from Brady and
his wife  pretending "through implication" that Question Number One of the June
26, 2015 Jury Interrogatory sheets was an jury finding that the Personal
Guarantees were enforceable, IGS Realty Attorney Robert Fass submitted to the
Court of Appeals the true fact that Question Number One on the Jury
Interrogatories was a finding, based on the false law given the jury, that
Plaintiff's corporations were operating as banquet halls and not meeting halls.

In his *Motion to Dismiss* Sheindlin is silent on addressing the fact that
while he was falsely "implying" that Question Number One the Jury
Interrogatories was a finding that the Personal Guarantees were enforceable, IGS
attorney Robert Fass was disproving Sheindlin's lie before the New York State
Court of Appeals by admitting question number one was nothing more than a
finding that Brady's corporations were operating as banquet halls and not
meeting hall's

In his January 5, 2018 OPPOSITION TO DEFENDANT-
APPEPLLANT'S MOTION FOR LEAVE TO APPEAL (Plaintiff's Exhibit No.
6-3), Robert Fass admitted that Question No. 1 of the Interrogatories pertained to

a finding of whether Plaintiff's corporate tenants were operating as meeting halls or banquet halls, which had absolutely nothing to do with whether or not the Personal Guarantees were enforceable.  This fact is proven by a reading of the headings from Robert Fass as shown below:

> "THE COURT'S JURY CHARGE REGARDING THE DIFFERENCE BETWEEN 'MEETING FACILITIES' AND 'BANQUET FACILITIES' WAS CORRECT UNDER THE APPLICABLE PROVISIONS OF THE NEW YORK CITY ZONING RESOLUTION AND BUILDING CODE"

On page 7, Mr. Fass wrote the following heading:

> "DEFENDANT- APPELLANT WAS NOT SURPRISED BY THE FACT THAT THE LEGALITY OF HIS USE WOULD BE LITIGATED"

And on page 9 Mr. Fass had the following heading:

> "THE APPELLATE DIVISION DID NOT REVESE THE JURY FINDING THAT THE DEFENDANT- APPELLANT WAS OPERATING AS AN ILLEGAL BANQUET FACILITY"

Robert Fass's admissions further prove that the Sheindlin's October 26, 2017 Article 52 *Petition* was fraudulent misrepresentation of the jury findings. Just like Robert Fass, Sheindlin knew Question No. 1 did not find that Brady was liable to IGS Realty and that questions number two and three were not findings rejecting Brady's personal guaranty defenses under the personal guarantees, yet Sheindlin committed fraud on the New York State Courts by using these three jury findings as the false instruments that used to force the sale of Brady's business to IGS Realty over $1.7 million dollars on September 5, 2018.

In his November 13, 2020 *Motion to Dismiss,* Sheindlin continues his pattern and practice of telling big lies and relentless personal attacks on Plaintiff as he tries to distract from his criminal conduct that destroyed the life of Plaintiff and his family in so many ways.

To try to cover his crime Sheindlin is now changing his story.  Now he states on page two of his *Motion to Dismiss* that "On June 26, 2015, a jury rendered a verdict in favor of IGS Realty against Brady for breach if the guarantee agreement."

The three question Jury Interrogatories prove this is a new lie and this false claim is nowhere to be found in the May 31, 2017 Judgment written by Sheindlin.

For the first time in this *Motion to Dismiss*, Sheindlin makes the following false claim that he never made in the State Court Judgment that he wrote and that is disproven by looking at the three questions on the June 26, 2018 Jury Interrogatories.

On Page 2 of his *Motion to Dismiss*, Sheindlin states that "on June 26, 2017 a jury rendered a verdict in favor of IGS Realty and against Brady for breach of the personal guarantee agreements."

These two new false claims were provided to Sheindlin by Magistrate Judge Wang and Judge Engelmayer as these two judges try to protect this politically connected man from the consequences of his criminal conduct.  But

facts are stubborn things and the three question Jury Interrogatory questions proves the multiple questions that needed to be answered in IGS favor and against Brady in order for IGS Realty to collect on the personal guarantees were not even on the jury interrogatories so it is untenable for Sheindlin or any of his protectors to claim "on June 26, 2017 a jury rendered a verdict in favor of IGS Realty and against Brady for breach of the personal guarantee agreements."

Sheindlin is desperately making this newly minted false claim now so that this Court would then state that the Rooker-Feldman Doctrine bars these courts review of this issue or Judgment.

The February 17, 2017 oral argument transcript prove conclusively that neither Judge Ostrager nor Sheindlin addressed the multiple questions that they knew needed to be determined in IGS's favor and against Plaintiff were never adjudicated.  Judge Ostrager never ruled that the personal guarantees were enforceable.

A review of the video of the Appellate Division, First Department May 16, 2018 Oral Argument Archives shows the Appellate Division judges and Sheindlin are silent and never ruled on whether the personal guarantees were enforceable, or on Plaintiff's defenses, and the Court of Appeals never ruled on the issue either.

The video of the May 16, 2018 Oral Arguments has been removed and destroyed by the Appellate Division, First Department but can be found on Plaintiff's website www.bullyjudges.com.

The evidence proves Brady continually demanded that the issue be adjudicated and the evidence proves the Judge Ostrager and the Appellate Division judges sat silent and never adjudicated one way or the other the issue of the personal guarantees, which is why Sheindlin cannot present any decision or judgment stating that the personal guarantees were enforceable.

The fact that Sheindlin got away with this crime in State Court does not make Plaintiff a "State Court Loser" but rather a crime victim that has a right to seek civil and criminal recourse against Sheindlin

Plaintiff has proven Sheindlin knew the jury finding in Question No. 1 dealt with determining the irrelevant and trumped up and false issue of whether Plaintiff's corporations were operating as "banquet hall" or "meeting halls" based on false law given to them by Judge Ostrager in his June 26, 2015 jury instructions:

> Plaintiff's claims that the leases it had with the corporations of the defendant, James Brady, required that the use -- the corporation's use and occupy the spaces only as meeting halls as defined by the law, but that instead he used them as banquet halls.
>
> A meeting hall is defined as a space in which during the major period of occupancy the persons assembled comprise a seated or otherwise passive

<u>audience to a performance or presentation and have their attention focused in a common direction at a common subject</u>.

A banquet hall is defined as a space, which during the major period of occupancy, persons assemble for dancing or for the consumption of food and drink, or any combination of dancing, eating or drinking or entertainment.

In order to award Mr. Brady any damages, you must find that during the major period of occupancy Mr. Brady's corporations were using the leased premises as a meeting hall. The Plaintiff seeks to recover damages for breach of the three leases.  (Transcript, June 26, 2015, p. 405:2-26 & p. 406:2-14). (R.394).

Judge Ostrager went on to repeat again and again the same erroneous

definition of meeting and banquet halls, that even if true had nothing to do with

whether or not the personal guarantees were enforceable:

Plaintiff asserts that Mr. Brady's corporations did not use the premises as a meeting hall, but instead used them as a banquet hall. It is for you to decide what use the premises were used for.  My charges to you on the law of damages must not be taken as a suggestion that you find either for the Plaintiff or the defendant. <u>It is for you to decide on the evidence presented and the rules of law I will give you whether either party is entitled to recover damages from the other.</u> (Transcript, p. 410).

The Plaintiff asserts that Mr. Brady's corporations did not use the premises as a meeting hall, but instead used them as banquet halls. It is for you to decide whether the premises were fit for use as a meeting hall, and if so whether they were used as meeting halls.  <u>If you find that the premises were not used as meeting halls, Mr. Brady cannot recover any damages on the fraudulent inducement claim</u>. (Transcript, 414).

In Plaintiff's *Second Amended Complaint*, filed September 30, 2020, proves that Sheindlin and IGS Realty's other attorney Robert Fass fully understood that Question Number 1 of the Jury Interrogatories was a finding (based on the false law given to them by Judge Ostrager) that Plaintiff's corporations were operating as banquet halls as opposed to the meeting hall use stated on the leases.

The second finding was that there was no breach of implied warranty of habitability, which had never been a defense put forward by Brady since there is no implied warranty of habitability in commercial leases.

And the third question was a directive by Judge Ostrager that if the Jury found that the premises were being used as banquet halls, the Jury must find that there was no fraud in the inducement.  No other findings exist.

Yet Mr. Sheindlin himself wrote the financial judgment signed by the County Clerk's Office on May 31, 2017 asserting by implication that the Jury found in favor of IGS Realty but without stating on what issue the Jury ruled, and does not say the Jury found the personal guarantees were enforceable:

> The jury rendered a verdict on June 26, 2015, in favor of Plaintiff, against the defendant, in the sum of $541,758.62.  (*IGS Realty v. James H. Brady*, Case No. 603561/2009 (NYS), *Judgment*, May 31, 2017).

In Sheindlin's *Motion to Dismiss*, Defendant heavily relies on quoting decisions by Judge Engelmayer and Magistrate Judge Wang that do nothing to disprove the claims against Sheindlin.

Neither Judge Engelmayer nor Wang were the randomly assigned judges to this case.  It should be noted that the case was randomly assigned on October 31, 2019 to Judge Nelson Roman, and then the case was reassigned to Judge Naomi Reice Buckwell before being reassigned fourteen days later for a third time on November 14, 2019 to Judge Paul Engelmayer.  There was a clear agenda as to why it was moved and landed on Judge Engelmayer's desk.

Claims that defy the facts must at minimum be disregarded by this Court, if not reported while determining the undisputable claims against Sheindlin. Nothing in any decision made by any judge, included Judges Wang and Englemayer, disprove the claims against Sheindlin, and the Court must deny Defendant's *Motion to Dismiss*.

In conclusion, there is no State Court judgment in favor of IGS Realty that the personal guarantees were enforceable, and no State Court judgment against Plaintiff's defenses against the personal guarantees, although Plaintiff litigated these issues extensively in State Court.

Sheindlin's defense of Rooker-Feldman, collateral estoppel, and *res judicata* fail miserably, as does his bizarre defense of the Noerr-Pennington Doctrine.

While Sheindlin repeatedly lied and states that Plaintiff was trying to reverse a judgment wherein the evidence proves Plaintiff fought to get a judgment, one way or another, on the personal guarantee matter, and Plaintiff's evidence proves the New York State Courts refused to adjudicate the issue because it could only be adjudicated in Plaintiff's favor because of the admissions of IGS Realty principle Philippe Ifrah and his attorney Robert Fass.

Sheindlin knew that the refusal of the State Court to adjudicate whether the personal guarantees were enforceable created a stalemate which Sheindlin knew would prevent him obtaining a judgment in favor of IGS Realty pertaining to the personal guarantees, and Plaintiff's evidence proves he obtained a financial judgment by fraudulently misrepresenting through implication that Question Number One of the Interrogatories was a jury finding that the personal guarantees were enforceable, and that Questions No. 2 and 3 were jury findings rejecting Plaintiff's defenses to the enforceability of the personal guarantees.

The State Court's refusal to adjudicate the issue of the personal guarantees did not make IGS Realty the State Court winner and Plaintiff the State Court

loser on the personal guarantee contracts, which were the only contracts Plaintiff had with IGS Realty.

For all of the above reasons, Sheindlin's *Motion to Dismiss* must be denied.


DATED:  December 1, 2020



___/s/____   James H. Brady____

James H. Brady, *Pro se Plaintiff*
510 Sicomac Avenue
Wyckoff, NJ 07481
(201) 923-5511
bradyny@gmail.com